IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02691-MSK-CBS

DOUGLAS BURNS,
        Plaintiff,
v.

TED LAURENCE,
TEJINDER SINGH, and
MICHAEL AASEN,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendants' Motion for Summary Judgment, filed on October 7, 2014 (Doc. # 213).  Pursuant to the Amended Order Referring Case dated October 8, 2014 (Doc. # 215) and the memorandum dated October 8, 2014 (Doc. # 216), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion, the affidavits and exhibits, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

In September 1985, Mr. Burns pled guilty to one count of second degree burglary and three counts as a habitual criminal.  He was sentenced to life imprisonment pursuant to Colo. Rev. Stat. § 16-13-101(2) (1986).  He was also sentenced in several other felony cases.  He did not appeal his convictions or sentences, but he has filed many post-conviction and other cases in the 29 years since his convictions.  Mr. Burns was paroled after this civil action was filed.

In his *pro se* capacity, Mr. Burns commenced this action *in forma pauperis* pursuant to 28

U.S.C. § 1915 on or about November 4, 2010.  (*See* November 4, 2010 "Order . . . Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. §1915" (Doc. # 2); June 13, 2012 "Amended Order Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. §1915" (Doc. # 62)).  On February 7, 2011, the court ordered Mr. Burns to file an amended complaint.  (*See* "Order Directing Plaintiff to File Amended Complaint" (Doc. # 9)).  On March 15, 2011, the court dismissed this civil action without prejudice because, *inter alia*, Mr. Burns failed to file an amended complaint.  (*See* "Order of Dismissal" (Doc. # 10)).  Mr. Burns appealed the dismissal to the Tenth Circuit Court of Appeals.  (*See* Letters (Docs. # 25, # 26)).  The Tenth Circuit Court of Appeals vacated the District Court's Orders and remanded the case "for the district court to consider Mr. Burns's evidence supporting his claim of non-receipt of the February 7[, 2011] order."  (*See* "Order and Judgment" (Doc. # 42 at 7 of 8)).  On May 11, 2012, the District Court ordered Mr. Burns to file an amended complaint that complied with the directives in the February 7, 2011 Order.  (*See* "Order Denying Motion to Recuse and Granting Motion to Reconsider" (Doc. # 58)).  Mr. Burns filed his Amended Prisoner Complaint ("AC") on June 11, 2012.  (*See* Doc. # 60).

On June 19, 2012, the District Court dismissed Claim One of the AC and Defendants Buford, the Colorado Attorney General, and Correctional Health Care Partners.  (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 63)).  On May 24, 2013, the District Judge approved the April 29, 2013 Recommendation of United States Magistrate Judge.  (*See* "Order Adopting April 29, 2013 Recommendation of Magistrate Judge and Granting Partial Motion to Dismiss" (Doc. # 117)).  The District Judge dismissed Mr. Burns's claims for declaratory and injunctive relief, Claims Two, Four, Six, and Eight of the AC, and Defendants Rob Huss, Jennifer Huss, Wolff, Meehan, Vahil, and all of the John and Jane

Doe Defendants.  (*See* Doc. # 117 at 2-3 of 4).[1]  The District Judge also dismissed Defendants

Laurence, Aasen, and Singh "from that portion of Claim 3 that alleges violation of Mr. Burns's

Fourteenth Amendment due process rights."  (*See id.* at 3 of 4).  The court permitted this civil

action to proceed on: (1) the portion of Claim 3 that alleges an Eighth Amendment violation

against Defendants Ted Laurence, P.A, Dr. Aasen, and Tejinder Singh, (2) Claim 5 against

Defendant Dr. Jeff Clemens, and (3) Claim 7 against Defendant Henrique A. Fernandez, M.D.

(*See* Doc. # 117 at 3 of 4).

On July 30, 2013, the District Judge *sua sponte* directed the Clerk of the Court to appoint

a member of the Civil Pro Bono Panel to represent Mr. Burns.  (*See* Doc. # 124).  Through

counsel, Mr. Burns moved to file a Second Amended Complaint.  (*See* Doc. # 136).  On

November 18, 2013, the Magistrate Judge accepted Mr. Burns's Verified Second Amended

Complaint ("SAC") for filing.  (*See* Courtroom Minutes/Minute Order (Doc. # 150);  SAC (Doc. #

152)).  The SAC alleged three Causes of Action against Defendants Laurence, Singh, Aasen,

Clemens, and Fernandez.  (*See* Doc. # 152).  Defendants Laurence, Singh, and Aasen filed

their Answer on December 9, 2013.  (*See* Doc. # 158).  Defendant Clemens and the Second

Cause of Action were dismissed by stipulation on February 25, 2014.  (*See* Docs. # 174, # 175).

Defendant Fernandez and the Third Cause of Action were dismissed by stipulation on July 10,

2014.  (*See* Docs. # 193, # 195).

On June 19, 2014, Mr. Burns's pro bono counsel moved to withdraw.  (*See* Docs. # 182,

# 183, # 184).  At a hearing held on July 9, 2014, the court permitted counsel to withdraw from

representation of Mr. Burns.  On July 11, 2014, the court directed the Clerk of the Court to again

appoint a member of the Civil Pro Bono Panel to represent Mr. Burns.  (*See* Doc. # 196).  To

date, new pro bono counsel has not been identified and Mr. Burns is proceeding in his *pro se*

---

[1]      The Recommendation and Order incorrectly identified that Claim Seven rather than Claim

capacity.

By a Minute Order dated July 14, 2014, the court set a Status Conference for August 12, 2014, directing the parties to appear in person.  (*See* Doc. # 197).   Counsel for Defendants appeared in person at the August 12, 2014 Status Conference.  Mr. Burns did not appear.   The court ordered Mr. Burns to submit on or before September 4, 2014 a Status Report "explaining the status of his discovery in this case."  (*See* Doc. # 199).   On August 19, 2014, Mr. Burns filed his "Request to Reset Hearing of August 11."  (*See* Doc. # 203).   The court converted the October 15, 2014 Final Pretrial Conference to a Status Conference and directed Mr. Burns to appear in person or via telephone.  (*See* Doc. # 205).   On September 30, 2014, Mr. Burns submitted a Notice of Change of Address and a letter inquiring about the status of obtaining pro bono counsel.  (*See* Docs. # 208, # 209).   On October 7, 2014, Mr. Burns filed a Motion for extension of Time, seeking to continue the October 15, 2014 Status Conference.  (*See* Doc. # 214).  Also on October 7, 2014, Defendants Laurence, Singh, and Aasen filed their Motion for Summary Judgment on the sole remaining First Cause of Action.  (*See* Doc. # 213).   The court vacated the October 15, 2014 Status Conference and directed Mr. Burns to file any response he had to the Motion for Summary Judgment on or before November 10, 2014.  (*See* Doc. # 218).   As of this date, Mr. Burns has not filed any report on the status of his discovery or any response to the Motion for Summary Judgment.

II.     Standard of Review

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Whether there is a genuine dispute as to a material fact depends upon whether

---

Six was dismissed.  (*See* Doc. # 116 at 25 of 26 ¶ g, Doc. # 117 at 3 of 4 ¶ (10)).

the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.

A fact is material if it pertains to an element of a claim or defense; a factual dispute is genuine if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.

The analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element.

*Allen v. Reynolds*, 2011 WL 2174424 * 1-2 (D. Colo. June 3, 2011) (internal quotation marks and citations omitted).

Defendants raise the affirmative defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014). "The first asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]" *Id.* (internal quotation marks and citation omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." *Id.* (internal quotation marks and citation omitted). "Courts have discretion to decide the order in which to engage these two prongs." *Id.* (internal quotation marks and citation omitted). *See also Estate of Booker*, 745 F.3d 405, 411-12 (10th Cir. 2014) (court may, in its discretion, "consider the two parts of this test in the sequence" deemed "best in light of the circumstances in the particular case at hand.") (internal quotation marks and citations omitted); *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) ("A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand.") (internal quotation marks and citations omitted).

Under either prong, the court must "view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." *Estate of Booker*, 745 F.3d at 411 (citation omitted). *See also Tolan*, 134 S. Ct. at 1866 (in making summary judgment determination, court "must view the evidence in the light most favorable to the opposing party.") (citations omitted). "Unlike most affirmative defenses, however, the plaintiff would bear the ultimate burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law." *Estate of Booker*, 745 F.3d at 411. "Thus, at summary judgment, we must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* (citations omitted). "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Herrera*, 589 F.3d at 1070. "If a plaintiff successfully carries his two-part burden, the defendant bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Estate of Booker*, 745 F.3d at 412.

Because Mr. Burns appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt.*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). This rule "applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (1991) (citations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). *See also Firstenberg v. City of Santa Fe, New Mexico*, 696 F.2d 1018,

1024 (10th Cir. 2012) ("[T]he generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate.") (citation omitted).

As of this date, Mr. Burns has not filed any response to the pending Motion.  Rule 56(e) specifically contemplates the consequences of failing to oppose a summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)."  *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002).  "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."  *Id.  See also Armstrong v. Swanson*, 2009 WL 1938793 at * 7 (D. Colo. July 2, 2009) ("When a party with the burden of proof fails to respond to a motion for summary judgment, the motion is not reflexively granted; rather, the Court simply deems the non-movant to have waived the opportunity to assert any additional facts and examines whether the facts asserted by the movant warrant a trial or permit entry of judgment as a matter of law.") (citation omitted);  *Barton v. City and County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants,

it remained incumbent upon the court to make the specific determinations required under Rule 56(c)).

As the SAC has been sworn to under penalty of perjury (*see* Doc. # 152 at 16 of 16), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

III.    Analysis

Mr. Burns brings his claims pursuant to 42 U.S.C. § 1983.  Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes*, 398 U.S. at 147, 150.  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In order to successfully state a cause of action under section 1983, [Plaintiffs] must allege . . . the deprivation of a federal right and that

the alleged action was taken under color of state law." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).

Mr. Burns alleges a constitutional violation arising from medical care he received in 2008 while he was incarcerated at the Denver Women's Correctional Facility ("DWCF"). Defendants Laurence, Singh, and Aasen were employed, respectively, as Physician's Assistants and a physician by the Colorado Department of Corrections ("CDOC") during the time period alleged in the SAC. In the sole remaining First Cause of Action, Mr. Burns alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments by deliberate indifference to his serious medical condition. (*See* Doc. # 152 at 1-6, 10, 13 of 16). Mr. Burns sues Defendants in their individual capacities, seeking monetary damages, costs, and attorney fees. (*See id.* at 14 of 16;  Doc. # 116 at 5 of 26 (noting that Mr. Burns clarified that "[t]he Defendants are sued in their personal and individual capacities") (citing Doc. # 101 at 2, 3 of 11)).

Mr. Burns alleges that Defendants inflicted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. (*See* Doc. # 152 at 13 of 16). The Supreme Court has recognized that the same facts may give rise to both an Eighth Amendment cruel and unusual punishment claim and a substantive due process claim under the Fourteenth Amendment. *Whitley v. Albers*, 475 U.S. 312, 326-27 (1986). "[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . ." *Id.* at 327. "Every circuit that has considered the question has concluded that the Eighth Amendment is the primary source of substantive rights of prisoners and that, with regard to the rights of convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments generally are congruous." *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1494 n. 6 (10th Cir. 1990)

(citations omitted).  *See also City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244

(1983) ("The due process rights of a person . . . are at least as great as the Eighth Amendment

protections available to a convicted prisoner.") (citation omitted).

> We agree with the views of the other circuits. Thus, we conclude that the safety
> and bodily integrity of convicted prisoners implicates both the Eighth Amendment's
> prohibition against cruel and unusual punishment and the Fourteenth
> Amendment's substantive protection against state deprivation of life and liberty
> without due process of law, and that the legal standards under the two
> amendments are identical under the facts of this case.  Because the Eighth
> Amendment provides the primary source of protection for prisoners, we will,
> however, refer to the standard as an Eighth Amendment standard.

*Berry*, 900 F.2d at 1494 n. 6 (10th Cir. 1990) (citations omitted).  Mr. Burns's claim is thus

properly addressed under the Eighth Amendment standard.  *See Lewis v. Downey*, 581 F.3d

467, 475 (7th Cir. 2009) ("anything that would violate the Eighth Amendment would also violate

the Fourteenth Amendment) (citation omitted);  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir.

2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat

to the health or safety of a person in custody should be analyzed under the same standard

irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.

CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison . . . [is] subject to scrutiny

under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when

prison officials "act deliberately and indifferently to serious medical needs of prisoners in their

custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).  *See also Estelle v. Gamble*,

429 U.S. 97, 104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners

constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth

Amendment.") (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective

component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations marks and citation omitted). Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "To make out an Eighth Amendment claim based on the failure to provide adequate medical care, a prisoner must show that the state defendants exhibited deliberate indifference to his serious medical needs; the mere negligent or inadvertent failure to provide adequate care is not enough." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198 n. 5 (1989) (internal quotation marks and citation omitted). *See also Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) ("A prison doctor's negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment") (internal quotation marks and citation omitted). For a prison official to be found liable for deliberate indifference under the Eighth Amendment, "the official must 'know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference.'" *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

A.    Undisputed Facts

Mr. Burns's claim is primarily based upon his allegation that Defendant Singh gave him

the prescription medication Asacol that contains the main ingredient mesalamine, to which he alleges he is allergic.[2]   When Mr. Burns arrived at Arkansas Valley Correctional Facility (AVCF) and was placed under the care of the Defendants, he had a history of ulcerative colitis.  In May or June 2007, he was diagnosed with ulcerative colitis while he was incarcerated at Colorado State Penitentiary (CSP) in the CDOC.  (*See* Attachment 1 to Motion, Burns Depo. (Doc. # 213-1) at pp. 117, 119).  Mr. Burns describes ulcerative colitis as "a chronic inflammatory disease of the large intestine that causes debilitating symptoms including swelling of the large intestine, bleeding, uncontrollable diarrhea, and bowel movements, anemia, confusion, nausea, and trouble sleeping." (*See* SAC (Doc. # 152) at 3 of 16).  Dr. Henrique Fernandez, a gastroenterologist, testified that the symptoms of ulcerative colitis included stomach pain, cramping, and fever, among other symptoms.  (*See* Attachment 15 to Motion, Fernandez Depo., at pp. 77-78).

At CSP on or about August 19, 2008, only a month prior to his arrival at AVCF, Mr. Burns had placed a package containing contraband razor blades and sharp pencils into his anus to hide it from corrections officers.  (*See* Doc. # 213-1 at pp. 136-37).  The package of pencils and razor blades was approximately two and a half inches long and one inch in diameter and "wrapped with cellophane or Saran wrap," toilet paper, and string.  (*See id.* at 137-40).  One of the razors cut through the plastic and into his rectum.  (*See id.* at p. 138).  Mr. Burns experienced bleeding but did not notify any CSP personnel about his condition.  (*See* Doc. # 213-1 at pp. 140-42).  Mr. Burns chose to not to say anything because he did not "want to draw any heat to the fact that we were doing that." (*See id.* at p. 141).  He was transferred from CSP to AVCF on or about September 17, 2008.  (*See id.* at p. 131; Ex. P to Burns Depo. (Doc. # 213-1) at 19 of 34).

---

[2]       Mesalamine is an anti-inflammatory drug used to treat ulcerative colitis and to control its

On September 24, 2008, Mr. Burns was seen on sick call by Defendant Singh for persistent rectal bleeding.  (*See* Doc. # 213-1 at 5, 21 of 34,  Attachment 2 to Motion, Singh Aff. (Doc. # 213-2) at ¶ 3).  Defendant Singh discussed ulcerative colitis with Mr. Burns.  (*See* Doc. # 213-2 at ¶¶ 3-4).  Defendant Singh noted that Mr. Burns was not taking any medication for his ulcerative colitis.  (*See id.*).  He diagnosed an acute flare-up of ulcerative colitis, ordered lab work, and prescribed Prednisone.  (*See id.*)  Defendant Singh offered both asulfidine and Imuran as medications to treat chronic ulcerative colitis, but Mr. Burns refused the medication.  (*See* Doc. # 213-1 at 7, 21 of 34, Doc. # 213-2 at ¶¶ 3-4).  Mr. Burns also refused to sign a "refusal form for the medication that was offered to him."  (*See id.,* Attachment 3 to Motion, Laurence Aff. (Doc. # 213-3) at ¶ 3).  At no time during the appointment with Defendant Singh did Mr. Burns inform him that he was allergic to mesalamine.  (*See id.* at ¶ 5;  Doc. # 213-3 at ¶ 7).  Defendant Singh did not prescribe Asacol or mesalamine for Mr. Burns on September 24, 2014. (*See* Doc. # 213-2 at ¶ 5, Doc. # 213-1 at 8 of 34).

Mr. Burns agreed to a recommended colonoscopy, which was performed on October 2, 2008 by Dr. Vahil, a gastrointestinal specialist.  (*See* Doc. # 213-1 at 8-9,  Ex. S (Doc. # 213-1 at 23 of 34), Doc. # 213-2 at ¶ 4).  Based on the results of the colonoscopy, Dr. Vahil concluded that Mr. Burns had "edema with ulcerations and friability throughout the left colon starting at the rectum and extending all the way up to the splenic flexure.  The findings are consistent with moderately severe ulcerative colitis."  (*See* Doc. # 213-1 at 24 of 34, Ex. T (Doc. # 213-1 at 25 of 34)).  Dr. Vahil prescribed Asacol, Rowasa enemas (both of which contain mesalamine), and Prednisone.  (*See id.*).  Nowhere in Dr. Vahil's medical records is there any indication that Mr. Burns was allergic to mesalamine or Asacol.  (*See id.*).

On October 7, 2008, Mr. Burns saw Defendant Singh for a follow-up visit after the

_____

symptoms.  *See* www.mayoclinic.org.

colonoscopy.  (*See* Doc. # 213-1 at 10 of 34, Doc. # 213-1 at 25 of 34, Doc. # 213-2 at ¶ 6).

Defendant Singh followed Dr. Vahil's prescription for Asacol, Rowesa enemas, and Prednisone.

(*See* Doc. # 213-1 at 10-11 of 34).   Nowhere in the medical records is there any indication that

Mr. Burns informed Defendant Singh he was allergic to mesalamine or Asacol or objected to the

treatment plan.  (*See* Doc. # 213-2 at ¶ 6, Doc. # 213-1 at 25 of 34).

On October 16, 2008, Defendant Singh saw Mr. Burns for complaints of nausea and a

solid stool.  (*See* Doc. # 213-1 at 11 of 34, Ex. U (Doc. # 213-1 at 26 of 34), Doc. # 213-2 at ¶

7).   Defendant Singh prescribed Mr. Burns phenergan for his nausea and corrected the

prescription notes to clarify that the Asacol be administered three times per day, as ordered by

Dr. Vahil, rather than two times per day.  (*See* Doc. # 213-2 at ¶ 7, Doc. # 213-1 at 26 of 34,

Doc. # 213-1 at 13 of 34).   Mr. Burns had not taken any mesalamine or Asacol prior to his

colonoscopy on October 2, 2008.  (*See* Doc. # 213-1 at 8 of 34, Ex. R (Doc. # 213-1) at 22 of

34).   Defendant Singh noted that Mr. Burns's medicine log for the month of October 2008

showed that he began taking Asacol on October 10, 2008, took it twice on October 11, once on

October 12, twice on October 13, once on October 14, and then stopped taking it.  (*See* Doc. #

213-2 at ¶ 8; Ex. V (Doc. # 213-1 at 27 of 34)).   Mr. Burns took his phenergan prescription only

four times between October 16 and 19, rather than twice per day as prescribed.  (*See* Doc. #

213-1 at 28 of 34).   Mr. Burns could not recall on what date he ceased taking the Asacol, but by

October 23, 2008, he "quit taking everything."  (*See* Doc. # 213-1 at 12-14 of 34).

Mr. Burns was seen on an emergency basis by the nurse on duty, John Klein, on October

19, 2008 for complaints of nausea and diarrhea.  (*See* Doc. # 213-1 at 14-15 of 34,  Doc. # 213-

3 at ¶ 4;  Ex. W (Doc. # 213-at 28 of 34).   Mr. Burns was prescribed Imodium to treat his

diarrhea.  (*See* Doc. # 213-1 at 28 of 34, Doc. # 213-3 at ¶ 4).   Mr. Burns was seen for a follow-

up appointment on October 20, 2008.   He stated that after taking the medications prescribed to

treat his nausea and diarrhea, he "was able to sleep well last night and feels a lot better" and "didn't have to wake up a lot and go to the bathroom." (*See* Doc. # 213-1 at 15 of 34, Ex. X (Doc. # 213-1 at 30 of 34)).

On October 23, 2008, Mr. Burns was seen by Nurse Deborah Howe for complaints of a fever and his request for ten days off work. (*See* Attachment 5 to Motion (Doc. # 213-5)). Nurse Howe noted that he had not been taking his medication as prescribed. (*See id.*) She explained that she could not provide him a "lay-in" from work and Mr. Burns left the medical department. (*See id.*).

Mr. Burns was seen by Defendant Singh on October 27, 2008 for complaints of diarrhea and bloody stools. (*See* Doc. # 213-2 at ¶ 9; Ex. Z (Doc. # 213-1) at 32 of 34). Defendant Singh, Health Services Administrator Michelle Nelson, and Nurse Tammy Pickerril discussed with Mr. Burns his non-compliance with his medication and treatment plan for his ulcerative colitis. (*See id.*). Defendant Singh ordered Imodium and phenergan for Mr. Burns's diarrhea and nausea, in addition to his existing prescriptions for Asacol, Rowasa enemas, and Prednisone. (*See id.*). He also ordered lab work to monitor Plaintiff's bleeding. Mr. Burns told Defendant Singh that he would not take his medication until he was taken off of work detail. (*See id.*). At this time, Defendant Singh was not aware that Mr. Burns was allergic to mesalamine. (*See* Doc. # 213-2 at ¶ 10).

Upon review of Mr. Burns's lab results and medical records, Defendant Singh concluded that his continued non-compliance with his treatment plan was causing his condition to worsen. (*See* Doc. # 213-2 at ¶ 11). On October 30, 2008, Defendant Singh called Mr. Burns to the medical unit to discuss his lab results and his non-compliance with medications and treatment. (*See* Doc. # 213-2 at ¶ 12; Ex. Y (Doc. # 213-1 at 31 of 34)). Mr. Burns refused to take the Prednisone, Asacol or Rowasa enemas. (*See* Doc. # 213-2 at ¶ 13; Doc. # 213-3 at ¶ 5).

Defendant Singh and Mr. Laurence warned Mr. Burns that his non-compliance with his medications was causing his rectal bleeding, that his ulcerative colitis would continue to worsen if he did not properly take his medication, and that he risked a colon perforation, septicemia, and a blood transfusion. (*See id.*). Mr. Burns finally agreed to take the Prednisone, Asacol and Rowasa enemas if Defendant Singh would reduce the Asacol dosage. (*See* Doc. # 213-1 at 31 of 34, Doc. # 213-2 at ¶ 13). Defendant Singh agreed to reduce the dosage of Asacol and ordered weekly blood counts to monitor Plaintiff's bleeding. (*See* Doc. # 213-1 at 31 of 34, Doc. # 213-2 at ¶ 13).

Mr. Burns was scheduled for an appointment on November 5, 2008 at 9:00 a.m., but did not attend. (*See* Doc. # 213-2 at ¶ 14). He was seen at 11:15 a.m. for a self-declared emergency for inflammation of his anus and left buttock crease area. (*See id.* at ¶ 15; Attachment 6 to Motion (Doc. # 213-6)). He was directed to cease enemas for seven days, given an antibiotic injection, an oral antibiotic, and an Ensure nutrition supplement, and advised to take sitz baths. (*See* Doc. # 213-2 at ¶ 15, Doc. # 213-6). Mr. Burns agreed to increase his Asacol usage and was scheduled for daily nursing visits. (*See id.*). Also on November 5, 2008, Defendant Singh took a urine sample from Mr. Burns, counseled him about the importance of fiber in his diet, and administered one liter of normal saline. (*See* Doc. # 213-2 at ¶ 16; Exh. AA (Doc. # 213-1 at 33 of 34)). Defendant Singh noted that Mr. Burns was compliant with his Prednisone for only one week and ordered Prednisone for the next three weeks. (*See id.*). Mr. Burns was seen daily by nurses on November 6, 7, 8, and 9, 2008 to check for infection near or around his buttocks. (*See* Doc. # 213-1 at 16 of 34, Ex. BB (Doc. # 213-1 at 34 of 34)). Mr. Burns's pain decreased each day and he had no fever. (*See* Doc. # 213-1 at 34 of 34). Defendant Singh saw Mr. Burns on November 10, 2008 for a follow-up appointment and determined that he had developed a right buttock abscess. (*See* Doc. # 213-2 at ¶ 17;

Attachment 7 to Motion (Doc. # 213-7)).  Defendant Singh consulted with Defendant Aasen, M.D. and Mr. Burns was immediately transported to St. Mary Corwin Hospital in Pueblo, Colorado for further evaluation.  (*See id.*, Doc. # 213-1 at 16 of 34).  Between November 10, 2008 and February 4, 2009, Defendants did not treat Mr. Burns.  (See Doc. # 213-2 at ¶¶ 17-19, Doc. # 213-3 at ¶¶ 5-6,  Doc. # 213-4 at ¶¶ 3-4).

Mr. Burns returned to AVCF on February 4, 2009.  (*See* Attachment 4 to Motion, Aasen Aff. (Doc. #213-4) at ¶ 3).  During his health screening, he did not indicate that he had any allergy or intolerance to Asacol or mesalamine.  (*See* Attachment 8 to Motion (Doc. # 213-8)).  Dr. Aasen examined Mr. Burns on February 4, 2009 and noted that he had a history of non-compliance with his medications and treatment plan.  (*See* Doc. # 213-4 at ¶ 5; Attachment 9 to Motion (Doc. # 213-9)).  The only allergy that Dr. Aasen noted was to penicillin.  (*See id.*).

Dr. Aasen continued to treat Mr. Burns until March 2010.  (*See* Doc. # 213-4 at ¶ 6; Attachment 10 to Motion (Doc. # 213-10)).  Dr. Aasen saw Mr. Burns for a regular periodic appointment on March 18, 2010.  (*See id.*).  Mr. Burns was taking asulfidine at that time to treat his ulcerative colitis.  (*See id.*).  Mr. Burns told Dr. Aasen that he had unilaterally reduced his azulfidine dosages to eliminate cramping.  (*See* Doc. # 213-4 at ¶ 6, Doc. # 213-10).  Dr. Aasen counseled Mr. Burns regarding the possible consequences of adjusting his medication himself, which could include a flare-up of his ulcerative colitis.  (*See id.*).

Mr. Burns did not attend his next follow-up appointment with Dr. Aasen.  (*See* Doc. # 213-4 at ¶ 7, Attachment 11 to Motion (Doc. # 213-11)).  He was seen by Defendant Singh on August 24, 2010 for his complaint that he had an allergic reaction to antibiotics he was taking for a foot injury.  (*See* Doc. # 213-2 at ¶ 19, Attachment 12 to Motion (Doc. # 213-12)).  He was taking Bactrim, which he had taken in the past and is similar to asulfidine, which he was taking at the time.  (*See* Doc. # 213-1 at 17 of 34, Doc. # 213-2 at ¶¶ 15, 19, Doc. # 213-3 at ¶ 8, Doc.

# 213-7).  An examination revealed no symptoms of an allergic reaction.  (*See* Doc. # 213-3 at ¶

8, Doc. # 213-12).  Defendants Singh and Laurence offered to change the antibiotics, but Mr.

Burns refused to take any antibiotics.  (*See* Doc. # 213-2 at ¶¶ 15, 19, Doc. # 213-3 at ¶ 8, Doc.

# 213-7).

Mr. Burns testified at his deposition that between October 17, 2010 and November 20 or

21, 2010, he began experiencing a flare-up of his ulcerative colitis.  (*See* Doc. # 213-1 at 17 of

34, *see also* Doc. # 152 at ¶ 26).  He testified that on or about November 14, 2010 he submitted

a "kite" to the medical unit requesting an appointment and that an appointment was set for him

to see Dr. Aasen on November 22, 2010.  (*See id.* at 18 of 34).  Other than checking Mr.

Burns's lab results on August 31, 2010 and seeing him regarding a sore calf muscle on or about

September 16 or 17, 2010, Defendants Singh and Laurence did not see or treat him between

August 25, 2010 and December 7, 2010.  (*See* Attachments 13, 14 to Motion (Docs. # 213-13, #

213-14), Doc. # 213-2 at ¶¶ 19-21, Doc. # 213-3 at ¶¶ 9-11, Doc. # 213-4 at ¶¶ 8-10).  On

November 20, 2010, Mr. Burns passed out in his cell.  (*See* Doc. # 152 at ¶ 26).  He was

immediately transported to St. Mary Corwin Hospital in Pueblo, Colorado for evaluation and

treatment.  (*See id.*).  Defendants did not know that Mr. Burns experienced an ulcerative colitis

flare-up until he returned to AVCF on or about December 7, 2010.  (*See* Doc. # 213-2 at ¶¶ 19-

21, Doc. # 213-3 at ¶¶ 9-11, Doc. # 213-4 at ¶¶ 8-10).

Mr. Burns relies upon two series of events as the grounds for his claims against the

Defendants: (1) his transfer to AVCF and the medical attention he received from September 24,

2008 through November 10, 2008, and (2) the recurrence of his ulcerative colitis symptoms and

Defendant Aasen's conduct in November 2010.  (*See* Doc. # 152 at 3-7 of 16).

B.      Liability of Defendants in their Official Capacities

Mr. Burns does not specify in the pleadings whether he is suing Defendants in their individual capacities, their official capacities, or both.  (*But see* Doc. # 116 at 5 of 26 (noting that Mr. Burns clarified that "[t]he Defendants are sued in their personal and individual capacities") (citing Doc. # 101 at 2, 3 of 11)).  To the extent that Mr. Burns may be suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the State of Colorado.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents");  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state);  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself").  The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Absent considerations not present in this case, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  Thus, any claim for money damages brought against Defendants in their official capacities under § 1983 is barred by the Eleventh Amendment and is properly dismissed with prejudice for lack of subject matter jurisdiction.  *See Fent v. Oklahoma Water Resources Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (Eleventh

Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction").[3]

C.      Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Burns is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165–67.

1.      2008 Events

a.      Defendants Aasen and Laurence

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ( "Personal participation is an essential allegation in a § 1983 claim."). A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir.

---

[3]      The Eleventh Amendment does not bar actions in federal court seeking prospective injunctive relief against state officials. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official). *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted). Mr. Burns seeks no specific injunctive relief in the SAC.

2001).

The record shows that neither Defendant Aasen nor Defendant Laurence examined Mr. Burns in 2008.  (*See* Doc. # 213-4 at ¶¶ 3-4;  Doc. # 213-3 at ¶¶ 3-6).  The record shows only that Defendant Laurence "witness[ed] and assist[ed] in [Defendant Singh's] counseling of the Plaintiff regarding Plaintiff's continued refusal to take his medications for his ulcerative colitis . . . ." and ordered Imodium at Nurse Klein's request on October 19, 2008 for Plaintiff's diarrhea. (*See* Doc. # 213-3 at ¶¶ 3-6).  Defendant Aasen is not identified in any of the medical records. Mr. Burns does not identify any specific action on any specific date by Defendant Aasen that would support his claim of a constitutional violation.  Conclusory allegations are insufficient to state a claim for violation of the Eighth Amendment.  *Riddle v. Mondragon*, 83 F.3d 1197, 1205-06 (10th Cir. 1996).  Defendants Aasen and Laurence are entitled to summary judgment because Mr. Burns fails to plead or present sufficient facts to demonstrate that they personally participated in the alleged violation.  *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (it is incumbent upon a plaintiff to "identify specific actions taken by particular defendants" in order to make out a viable § 1983 claim).

Further, while the court accepts Mr. Burns's verified allegations as true, they do not establish a constitutional violation.  He alleges that Defendants refused to provide his "requested alternative treatment options" or "different medications."  (*See* Doc. # 152 at ¶¶ 15, 16, 18).  These allegations fail to state an Eighth Amendment violation because such allegations amount to nothing more than disagreement with decisions made by prison medical personnel concerning medical treatment.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion between prisoner and his treating physicians about the offered alternatives and the preferred course of medical treatment does not constitute an Eighth Amendment violation);  *White v. Goff*, No. 07--3311-SAC, 2011 WL 624059, at * 2 (D. Kan. Feb. 11, 2011)

(while plaintiff sometimes did not receive the specific type of medication he sought and was often dissatisfied with the medical attention provided and noncompliant with the medical advice he received, his disagreement with the care offered does not establish that he was denied constitutionally adequate medical care); *Martinez v. Boyd*, No. 08-cv-2181-PAB-MEH, 2009 WL 2766771, at * 6 (D. Colo. Aug. 27, 2009) (claims of deliberate indifference based on prison medical personnel not granting prisoner's request for an alternative type of TB test and not providing him his preferred choice of medication did not provide adequate basis for establishing an Eighth Amendment violation) (citation omitted).  Mr. Burns's conclusory allegations do not support his claim, as he has not shown that the chosen course of treatment "was medically unacceptable under the circumstances," or was chosen "in conscious disregard of an excessive risk to [his] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).  For this reason also, Defendants Aasen and Laurence are entitled to summary judgment on Mr. Burns's claim encompassing their conduct in 2008.

b.      Defendant Singh

Eighth Amendment claims alleging inadequate medical care "involve both an objective and a subjective component, such that [courts] must determine both whether the deprivation is sufficiently serious and whether the [government] official acted with a sufficiently culpable state of mind." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks and citations omitted).  "[A] medical need is considered sufficiently serious if the condition has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine*, 241 F.3d at 1276 (internal quotation marks and citation omitted).  Mr. Burns's diagnosis of ulcerative colitis is a serious medical need that satisfies the first, objective component of his Eighth Amendment

claim.  *See Doutre v. Aranas*, No. 2:12-cv-00772-RFB-VCF, 2014 WL 5047563, at * (D. Nev. Oct. 8, 2014) (diagnosis of ulcerative colitis is a serious medical need that satisfies the first prong of the deliberate indifference test);  *Arnette v. Armor Correctional Health Services, Inc.*, No. 7:12-cv-00519, 2013 WL 5356869, at * 6 (W.D. Va. Sept. 24, 2013) (no dispute that ulcerative colitis constitutes a serious medical need).

"Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody." *Perkins*, 165 F.3d at 811 (citing *Estelle*, 429 U.S. at 104-106).  Deliberate indifference requires that the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 847.  Deliberate indifference means that "a prison official may be held liable ... only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.  See also Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (subjective component of an Eighth Amendment claim requires "that the official actually be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).

Mr. Burns does not provide evidence to support the subjective component of his Eighth Amendment claim: that Defendant Singh was deliberately indifferent to a substantial risk of serious harm to him.  Before he arrived at AVCF, Mr. Burns had a history of chronic colon disease and had cut his rectum by inserting contraband into his anus.  When he arrived at AVCF, he was not taking any medication to treat his disease and had not sought medical treatment for the injury to his rectum even while he was experiencing bleeding.  Defendant Singh saw Mr. Burns for the first time on sick call within a week of his arrival at AVCF for his complaint of persistent rectal bleeding.  (*See* Doc. # 213-1 at 5, 21, of 34, Doc. # 213-2 at ¶ 3). Defendant Singh promptly arranged for Mr. Burns to have a colonoscopy, which was performed

approximately one week later.

Defendant Singh attempted to prescribe asulfidine and Imuran to treat the ulcerative colitis, but Mr. Burns refused the medications.  (*See* Doc. # 213-1 at 7 of 34, Doc. # 213-2 at ¶¶ 3-4).  Dr. Vahil, who performed the colonoscopy, prescribed Asacol, Rowasa enemas, and Prednisone and Defendant Singh ordered the medications for Mr. Burns.  (*See* Doc. # 213-1 at 10-11, 24-25 of 34).  Although Mr. Burns had many opportunities to inform the Defendants that he is allergic to the mesalamine in some of the medications he was prescribed, there is no evidence in the medical records that is consistent with his allegation that he so informed them. (*See* Doc. # 213-1 at 4-5, 19-20 of 34 (Mr. Burns did not inform Nurse Deborah Howe at initial health screening on September 17, 2008 that he was allergic to mesalamine), Doc. # 213-1 at 21 of 34 (Mr. Burns refused to take Imuran and asulfidine because it caused "stomach upset," but did not inform Defendant Singh that he was allergic to mesalamine), Doc. # 213-1 at 9, 24-25 of 34 (nothing in Dr. Vahil's records show Mr. Burns informed him that he was allergic to mesalamine), Doc. # 231-2 at ¶¶ 5, 6, 10 (Mr. Burns did not inform Defendant Singh that he was allergic to mesalamine), Doc. # 213-3 at ¶ 7, Doc. # 213-4 at ¶ 9, Doc. # 213-8 (Mr. Burns did not inform Nurse Deborah Howe at health screening on February 4, 2009 that he was allergic to mesalamine), Doc. # 213-9 (nothing in Dr. Aasen's records show Mr. Burns informed him that he was allergic to mesalamine)).  Mr. Burns's medical record indicated that the only medication he was allergic to was penicillin. (*See* Doc. # 213-1 at 5, 20 of 34).

Other than his conclusory allegations, Mr. Burns does not present evidence that mesalamine caused him injury.  The evidence in the record shows that his refusal and/or failure to take prescribed medications left his ulcerative colitis untreated and caused his injuries.  (*See* Doc. # 213-15).  The symptoms Mr. Burns experienced when he repeatedly refused or failed to comply with his treatment and take his prescribed medications are the very symptoms of

ulcerative colitis.  (*See* Doc. # 152 at ¶¶ 11, 17 ("swelling of the large intestine, bleeding, uncontrollable diarrhea, and bowel movements, anemia, confusion, nausea, and trouble sleeping"), Doc. # 213-15 at 3 of 3).  Although Defendant Singh and others counseled Mr. Burns on several occasions regarding the importance of taking his medications and the risks of not taking the prescribed medications, he repeatedly refused or failed to take his medications because, based on his own personal research and opinion, he disagreed with the treatment plan.  (*See* Doc. # 213-1 at 4, 7, 11-18, 21-22, 27, 29-32 of 34, Doc. # 213-2 at ¶¶ 8-9, 12-13, Doc. # 213-3 at ¶¶ 3, 5, 8, Doc. # 213-4 at ¶ 6, Doc. # 213-5, Doc. # 213-10, Doc. # 213-12).  "Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training of expertise upon which to base such an opinion."  *Fleming v. LeFevere*, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006).

Mr. Burns has presented no evidence that the course of treatment Defendant Singh followed was medically unacceptable under the circumstances.  *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [the prisoner's] health") (citation omitted).  Even if there could be undesirable side effects from taking mesalamine, there is no evidence that Defendant Singh knew of any risk of harm that outweighed the harm of leaving Mr. Burns's condition untreated.  The evidence in the record indicates that more than one medical professional considered the medications prescribed for Mr. Burns to be appropriate for treating his ulcerative colitis.  (*See* Doc. # 213-1 at 24-25 of 34, Doc. # 213-15).  Mr. Burns concedes that he frequently refused and/or failed to take his medications as prescribed or unilaterally altered his dosage.  (*See* Doc. # 213-1 at 4, 7, 11-18, 21-22, 27, 29-32 of 34).  Mr. Burns fails to controvert the medical evidence showing that his

condition might have improved if he had consistently complied with his treatment plan and taken the prescribed medications.

"The prisoner's right is to medical care – not to the type or scope of medical care which he personally desires." *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968). "A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Id.* As Mr. Burns's claim is based only on his differing opinion regarding the nature of his medical treatment, he has failed to show that Defendant Singh's conduct rose to the level of deliberate indifference to his serious medical need. The record "clearly reveals a competent and conscientious course of medical treatment, and [Mr. Burns's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment." *Selby v. Martin*, 84 F. App'x 496, 499 (6th Cir. Dec. 2, 2003).

Defendant Singh regularly saw and treated Mr. Burns for his ulcerative colitis and other medical conditions. The record shows that Mr. Burns was seen and/or treated by Defendant Singh or other medical personnel on September 17, September 24, October 7, October 16, October 19, October 20, October 23, October 27, October 30, November 5, November 6, November 7, November 8, November 9, and November 10, 2008. Defendant Singh and other medical personnel provided Mr. Burns with a treatment plan and prescribed medications. Even viewing the evidence most favorably to Mr. Burns, the court concludes that the record shows Defendant Singh responded to his medical complaints promptly upon his arrival at AVCF, ran multiple diagnostic tests to determine his medical needs, consistently provided the treatment commonly used for his condition, and referred him to specialists and an outside hospital when necessary. *See Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet. . . the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.") (citation omitted);  *Camberos v. Branstad*, 73 F.3d 174, 177 (8th Cir. 1995) (prison nurses were not deliberately indifferent where they "painstakingly chronicled" inmate's numerous medical complaints, "conscientiously evaluated each problem," often referred him to physician's assistant on duty, and sent him to outside hospital seven times for further treatment).  Mr. Burns presents no evidence that Defendant Singh was deliberately indifferent to his serious medical need.  As Mr. Burns fails to present competent evidence to support the element of deliberate indifference, he cannot show that there are genuine issues of material fact to preclude the granting of summary judgment for Defendant Singh on his Eighth Amendment claim.

Mr. Burns also alleges that Defendant Singh "delayed his treatment until November 10, 2008, at which point he sent Mr. Burns in an emergency transport to St. Mary-Corwin Hospital for treatment" of his right buttock abscess.  (*See* Doc. # 152 at ¶¶ 23-24).  Delaying medical treatment can violate the Eighth Amendment if the delay "in itself reflect [s] deliberate indifference which results in substantial harm."  *Anderson v. Colorado Dept. of Corrections*, 848 F. Supp. 2d 1291, 1299 (D. Colo. 2012) (internal quotation marks and citation omitted).  The "substantial harm" or objective element of this test is satisfied by a showing that a delay in treatment resulted in "lifelong handicap, permanent loss, or considerable pain" and the "deliberate indifference" or subjective element is satisfied by facts indicating that defendant prison officials were aware of facts from which they could infer that the delay would cause a substantial risk of serious harm and did, in fact, draw that inference.  *Garrett v. Stratman*, 254 F.3d 946, 949–50 (10th Cir. 2001).

Mr. Burns's allegation of delay against Defendant Singh is completely contrary to the evidence in the record.  He was seen and treated on November 5, 2008 for a self-declared

emergency for inflammation of his anus and left buttock crease area.  (*See* Doc. # 213-2 at ¶¶ 15-16; Doc. # 213-6, Doc. # 213-1 at 33 of 34).  Mr. Burns was seen and treated daily by nurses on November 6, 7, 8, and 9, 2008 to check for infection near or around his buttocks.  (*See* Doc. # 213-1 at 16 of 34, Doc. # 213-1 at 34 of 34).  Mr. Burns's pain decreased each day and he had no fever.  (*See* Doc. # 213-1 at 34 of 34).  Defendant Singh saw Mr. Burns on November 10, 2008 for a follow-up appointment and determined that he had developed a right buttock abscess.  (*See* Doc. # 213-2 at ¶ 17; Doc. # 213-7).  Defendant Singh consulted with Defendant Aasen, M.D. and Mr. Burns was immediately transported to St. Mary Corwin Hospital in Pueblo, Colorado for further evaluation.  (*See id.*, Doc. # 213-1 at 16 of 34).  Mr. Burns's vague and conclusory allegation does not reveal that any delay affected his medical condition.  *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) ("Where a prisoner claims that harm was caused by a delay in medical treatment, he must show that the delay resulted in substantial harm in order to satisfy the objective prong of the deliberate indifference test.") (internal quotation marks and citation omitted);  *Mata*, 427 F.3d at 751 ("[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.") (internal quotation marks and citation omitted);  *Hunt*, 199 F.3d at 1224 ("Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems.");  *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.") (citation omitted).  There is no evidence that supports Mr. Burns's allegation that Defendant Singh caused any delay that reflected deliberate indifference which resulted in substantial harm to him.

2.     2010 Events

In the SAC, Mr. Burns refers to Dr. Aasen's conduct in 2010.  (*See* Doc. # 152 at ¶ 26).[4]

He alleges that [b]etween 2008 and 2010," his "ulcerative colitis went into remission."  (*See id.*).

"Between October 17 and November 14, 2010," he "experienced a recurrence of the ulcerative

colitis" and "sought medical attention on November 14, 2010" by submitting a "kite" and

requesting an appointment.  (*See* Doc. # 152 at ¶ 26, Doc. # 213-1 at 18 of 34).  He alleges that

an appointment was scheduled with Dr. Aasen on November 21st or 22nd.  (*See id.*).  However,

on or about November 20, 2010, Mr. Burns passed out in his cell and was transported to St.

Mary Corwin Hospital.  (See Doc. # 152 at 6-7 of 16).

To the extent that Mr. Burns may be alleging that Dr. Aasen delayed his treatment from

November 14 to November 21 or 22, 2010, while he generally alleges "severe illness and

permanent disfigurement " (*see, e.g.*, Doc. # 152 at ¶¶ 25, 42, 54), he does not specifically

allege or show that it was caused by a one-week delay by Defendant Aasen in making a

medical appointment in November of 2010.  Mr. Burns did not seek medical attention for his

ulcerative colitis flare-up that began on October 17, 2010 until November 14, 2010.  (*See* Doc. #

213-1 at 18 of 34, Doc. # 213-2 at ¶¶ 19-21, Doc. # 213-3 at ¶¶ 9-11, Doc. # 213-4 at ¶¶ 8-10).

He did not notify Defendant Aasen that his condition was an emergency.  (*See* Doc. # 213-4 at ¶

9).  Mr. Burns's vague allegations do not indicate how the alleged delay exacerbated his

medical condition.  The allegations and evidence are not sufficient to show that Defendant

Aasen caused any delay that reflected deliberate indifference which resulted in substantial harm

to Mr. Burns.

Mr. Burns also vaguely alleges that in 2011 Defendant Aasen denied him access to

---

[4]       Mr. Burns does not allege any conduct by Defendants Singh or Laurence in 2010 and the
record shows that they did not see or treat him between August 25, 2010 and December 7, 2010.  (*See*
Docs. # 152 at 6-13 of 16, # 213-12, # 213-13, # 213-14, # 213-2 at ¶¶ 19-21, # 213-3 at ¶¶ 9-11).

medications that had been identified by physicians at St. Mary Corwin Hospital.  (See Doc. #

152 at 10 of 16).  This allegation is wholly conclusory and unsupported by facts or evidence.

As Mr. Burns does not adequately allege or demonstrate that Defendant Aasen violated his

constitutional rights, Defendant Aasen is entitled to summary judgment.

Finally, to the extent that the First Cause of Action contains allegations that on or about

October 27, 2008, when Defendants Singh, Laurence, and Assan learned that Mr. Burns

stopped taking his medications, they summoned him to the Arkansas Valley Medical

Department and threatened him "with disciplinary charges" and "all the cost of his medical care

if plaintiff did not continue to take the prescribed medic[a]tions" (*see* Doc. # 152 at 5 of 16),

allegations of verbal threats do not state a cognizable claim under § 1983.  *See Dunn v. White*,

880 F.2d 1188, 1198 (10th Cir. 1989) (dismissal of due process claim affirmed, as "[t]he mere

threat of prison discipline did not infringe on a prisoner's protected liberty interest") (citation

omitted);  *Melanson v. Swindler*, No. 09–cv–02405–BNB, 2009 WL 4884188, at * 1 (D. Colo.

Dec. 15, 2009) (allegations that prison official told lies about prisoner, verbally harassed and

degraded him, and made threats against him did not state an arguable constitutional claim)

(citations omitted);  *Akervik v. Ray*, No. 01-3071, 01-3075, 2001 WL 1429413, at * 2 (10th Cir.

Nov. 15, 2001) ("Verbal harassment alone does not state a constitutional violation.") (citation

omitted).


IV.    Conclusion

The Eleventh Amendment bars any claim for money damages brought against

Defendants in their official capacities under § 1983 and Mr. Burns does not allege any basis for

prospective injunctive relief.  Because Mr. Burns fails to present facts on which a reasonable

jury could find a violation of a constitutional right, the court need not reach the "clearly

established" prong of qualified immunity to conclude that Mr. Burns's claim fails. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).  Defendants in their individual capacities are entitled to qualified immunity from Mr. Burns's claim.  Accordingly,

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment, filed on October 7, 2014 (Doc. # 213) be GRANTED and judgment be entered in favor of Defendants and against Plaintiff on the single remaining claim in the SAC.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo*

despite the lack of an objection does not preclude application of the "firm waiver rule");

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901,

904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order,

cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United*

*States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived

their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418

F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice

require review).

DATED at Denver, Colorado this 12th day of January, 2015.

BY THE COURT:


  s/Craig B. Shaffer                           
United States Magistrate Judge